IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DIMITRIC MOSLEY,

              Petitioner,                       No. CIV S-09-2827 MCE GGH P

     vs.

JAMES WALKER,

                                     FINDINGS AND RECOMMENDATIONS
              Respondent.

_____/

I.  Introduction

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2006 conviction for attempted murder, attempted robbery and other related counts.  The trial court sentenced petitioner to a determinate term of seventeen years with a consecutive indeterminate term of twenty-five years to life.  This action is proceeding on the original petition filed October 13, 2009, raising the following claims: 1) petitioner did not knowingly waive his right to a jury trial when he agreed to a bench trial; 2) insufficient evidence to support the gang enhancement, attempted robbery and attempted murder counts; and 3) ineffective assistance of trial and appellate counsel.[1]

        After carefully considering the record, the court recommends that the petition be

---

[1] One of the ineffective assistance of counsel claims will be discussed separately with claim 1.

1 denied.

2 II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

3           The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked

4 substantial changes to the law of habeas corpus," establishing more deferential standards of

5 review to be used by a federal habeas court in assessing a state court's adjudication of a criminal

6 defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

7 1997).

8           In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

9 Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

10 for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

11 between "contrary to" clearly established law as enunciated by the Supreme Court, and an

12 "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

13 to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

14 Court on a point of law, or (2) if the state court case is materially indistinguishable from a

15 Supreme Court case, i.e., on point factually, yet the legal result is opposite.

16           "Unreasonable application" of established law, on the other hand, applies to

17 mixed questions of law and fact, that is, the application of law to fact where there are no factually

18 on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

19 Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

20 AEDPA standard of review which directs deference to be paid to state court decisions.  While the

21 deference is not blindly automatic, "the most important point is that an *unreasonable* application

22 of federal law is different from an incorrect application of law....[A] federal habeas court may not

23 issue the writ simply because that court concludes in its independent judgment that the relevant

24 state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

25 that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

26 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

2

1   objectively unreasonable nature of the state court decision in light of controlling Supreme Court

2   authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

3          "Clearly established" law is law that has been "squarely addressed" by the United

4   States Supreme Court.  Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).

5   Thus, extrapolations of settled law to unique situations will not qualify as clearly established.

6   See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not

7   permitting state sponsored practices to inject bias into a criminal proceeding by compelling a

8   defendant to wear prison clothing or by unnecessary showing of uniformed guards does not

9   qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

10         The state courts need not have cited to federal authority, or even have indicated

11   awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

12   Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

13   contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

14   unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

15   occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

16   established Supreme Court authority reviewed must be a pronouncement on constitutional

17   principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

18   binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

19         However, where the state courts have not addressed the constitutional issue in

20   dispute in any reasoned opinion, the federal court will independently review the record in

21   adjudication of that issue.  "Independent review of the record is not de novo review of the

22   constitutional issue, but rather, the only method by which we can determine whether a silent state

23   court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

24   2003).

25   III.  Background

26         The opinion of the California court of appeal contains a factual summary that the

3

1    court adopts below.[2]

2         Shortly after midnight on the night of February 21, 2005, Justin Starks was
          walking home from Kaiser Permanente Hospital in South Sacramento.  As he
3         walked on Grandstaff Drive a white Crown Victoria passed him.  Those in the car
          yelled profanities at him as it passed.  Starks continued walking.  As he
4         approached the intersection at Maybelline Way, [petitioner and Gaines] crossed
          the street and accosted him.

5
          [Petitioner] had a gun.  He put it to Starks's neck, asking who Starks was.
6         Defendant Gaines, meanwhile, was reaching into Starks's right coat pocket.
          Starks grabbed the barrel and pushed the gun away.  [Petitioner] put the gun away.
7         He asked where Starks was from.  Starks recognized [petitioner] as someone he
          had seen two weeks earlier. [Petitioner] said to defendant Gaines: "It's cool."
8         Defendant Gaines said "no," that he was "going to check [Starks's] pockets
          anyway."  He reached into Starks's pocket again.

9
          Starks reached in and removed defendant Gaines's hand.  Defendant Gaines
10        grabbed Starks by the shirt collar and began punching him in the face.  During the
          altercation Starks heard two gunshots and defendant Gaines announced he had
11        been shot by [petitioner].  [Petitioner] "continued to shoot" at Starks who
          attempted to flee.  He heard several more gunshots.  He was hit in the lower back
12        and the buttocks and fell to the ground.  [Petitioner and defendant Gaines] ran off.

13        Sacramento Police Officer Sean Lewis arrived at the scene about 12:08 a.m.
          Lewis found a nine-millimeter shell casing at the scene of the shootings, less than
14        a foot from where Starks was lying.

15        On the night of the shootings, Jose Gil was working as an EMT at Kaiser
          Permanente Hospital in South Sacramento.  Sometime between midnight and
16        12:30 a.m. he was taking a break in the ambulance bay adjacent to the emergency
          room.  A white Crown Victoria screeched up.  A picture of the car, taken at the
17        hospital, was identified by the victim Starks as the one involved in the incident
          preceding his being shot.

18
          There were four men in the car, including [petitioner and Gaines].  [Petitioner]
19        was driving, defendant Gaines was in the back seat on the passenger side.  The
          other men were making a commotion, calling on Gil for help as defendant Gaines
20        had been shot.  The others were reassuring defendant Gaines, saying: "We're your
          homeys.  We'll work Crips.  You will be all right."

21
          Gil went to the car to help get defendant Gaines out.  Defendant Gaines was
22        bleeding.  Viscera protruded from his abdomen wound.  Gil saw a semiautomatic
          handgun sitting on the front seat of the car.  Defendant Gaines received
23        emergency treatment and was taken in for surgery.  However, [petitioner] and the
          other two occupants of the car soon departed when they heard the police were
24        coming.  Gil identified himself, [petitioner and defendant], and the car in
          monitoring photos admitted into evidence.  He testified that an injury shown in a

25

26        _____
          [2] Petitioner was tried with co-defendant, Corey Gaines.

                                        4

1    photo of defendant Gaines was a gunshot wound.

2    Earlier on the evening of the shootings, around 10:30 p.m., [petitioner] and three
     other African-American males had arrived in the white Crown Victoria at an
3    AM/PM store on Mack Road near Highway 99.  As they were departing in the car,
     another male customer called out a caution to not hit a woman pedestrian.
4    [Petitioner] got out of the car and began striking the male customer; his associates
     then joined him in beating the man.  They all wore blue.  At some point
5    [petitioner] was seen by a cashier for the store flashing gang signs with his hands
     and was overheard to say something about "Valley High Cuz."

6
     Several days later, on the afternoon of March 23, 2005, Sacramento Police
7    Sergeant Charles Husted detained [petitioner].  He ordered him out of the car he
     was in.  Sergeant Husted found a loaded nine-millimeter pistol under the front
8    passenger seat where [petitioner] had been seated.  Starks identified the pistol as
     the one [petitioner] had used on the night he was shot.  A criminalist concluded
9    that the shell casing found at the scene of the shootings had been discharged from
     this pistol.
10
     Sergeant Husted also found a cell phone in or around the front passenger seat.
11   The screen of the phone displayed the words "Crip gang."  He called a number in
     the phone's memory.  A female answered.  He described [petitioner].  The female
12   said the person Sergeant Husted had described was [petitioner].

13   Sacramento District Attorney Investigator Adlert Robinson testified as an expert
     on African-American gangs as follows: Crips is one such gang.  Robbery is one
14   primary criminal activity of Crips.  Crips wear blue.  Valley High Crips is a
     subset.  They are concerned with turf or territory.  Leadership is derived from
15   participation in criminal activities, e.g., robberies.  [Petitioner] is a Crip gang
     member, validated by Monterey County Probation.  He admitted this to the
16   arresting officers, who saw him throwing gang hand signs.  He uses "cuzz," a term
     of Crip argot.  His cell phone displayed the message "Crip gang."  He wears blue
17   and he was housed in the Crip cell block.  Defendant Gaines by his own
     admission is a Valley High Crip.
18
     If a gang member is in a confrontation the others in his set are obliged to back
19   him.  Physical resistance to a robbery by Crips is disrespectful.  Investigator
     Robinson opined that the robbery of Starks was done for the benefit and at the
20   direction of the Crip gang.  He based that opinion on the way [petitioner and
     Gaines] approached the victim, what they said to Starks when they walked up on
21   him ["where are you from" means with what gang are you affiliated], the fact that
     [petitioner and Gaines] are Crip gang members, the fact that the crime itself is a
22   crime that is commonly committed by Crip gang members, or street gang
     members as a whole, and the fact that gang members took care of [petitioner and
23   Gaines] and left the victim to die on the street after the robbery occurred.

24   People v. Mosley, 2008 WL 344488 at *1-3.

25   \\\\\

26   \\\\\

5

IV.  Argument & Analysis

Claim 1 - Bench Trial

Petitioner argues that he did not make a knowing waiver of his right to a jury trial when he requested a bench trial as counsel never fully explained the ramifications of a jury trial to plaintiff and the trial court never asked if counsel had explained the differences.  Petitioner also contends that trial counsel was ineffective in making this decision.

Trial Court Error

Legal Standard

The clearly established federal law on jury trial waiver was set forth in Patton v. United States, 281 U.S. 276, 312-13, 50 S.Ct. 253, 263 (1930), namely, the general rule that a jury waiver must be voluntary, knowing, and intelligent.  See Adams v. United States, 317 U.S. 269, 276, 63 S.Ct. 236, 240 (1943) (Patton established that a defendant may waive a jury in the exercise of a free and intelligent choice); Brown v. Burns, 996 F.2d 219, 221 (9th Cir. 1993) (per curiam) (citing Patton as the clearly established federal law that a jury trial waiver that is voluntary, knowing, and intelligent is constitutionally valid).

Discussion

This claim was brought on direct appeal and denied in a reasoned opinion by the court of appeal.

[Petitioner and co-defendant Gaines] contend that the trial court erred in denying their motions for new trial based on the claim that their waivers of trial by a jury were not knowing and intelligent.  [Petitioner] argues that the trial court was compelled to grant his motion because he averred that he was confused and did not understand his right to a jury trial and because his counsel did not discuss the matter with him until the case was assigned to a trial court . . . Neither argument is persuasive and the contentions of error have no merit.

"A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel."  (Cal. Const., art. I, § 16.)  There is no requirement that the trial court engage in a particularized inquiry to determine whether the express waiver is knowing and intelligent.  However, "[i]t is probably the better practice for the trial judge, by inquiry, to make sure that the defendant understands the right to a jury trial."  (5 Witkin, Cal.Criminal Law (3d ed. 2000) Criminal Trial, § 452, p. 648.)

This does not entail telling a defendant who is represented by competent counsel about " 'all the ins and outs' of a jury trial" (<u>People v. Wrest</u> (1992) 3 Cal.4th 1088, 1105; <u>People v. Lookadoo</u> (1967) 66 Cal.2d 307, 311); the relative advantages of the different types of trials (<u>see, e.g., People v. Acosta</u> (1971) 18 Cal.App.3d 895, 902); or that a jury trial requires a unanimous verdict (<u>see People v. Tijerina</u> (1969) 1 Cal.3d 41, 45-46).

The trial court does not have to elicit the reasons for a jury trial waiver when the defendant, represented by competent counsel, appears to make an intelligent, knowing and voluntary waiver of his right to a jury trial on the record, and indicates he has no questions or need to discuss the matter with counsel. (<u>See People v. Diaz</u> (1992) 3 Cal.4th 495, 571; <u>People v. Robertson</u> (1989) 48 Cal.3d 18, 36-38.) The appellate court will not reverse a jury trial waiver which otherwise appears voluntary, knowing and intelligent based on the defendant's posttrial assertion he did not understand some aspect of a jury trial. (<u>See, e.g., Diaz</u>, at pp. 570-571.)

The same general considerations apply to the trial court in considering a motion for new trial. [Petitioner] had half a day to consider the jury trial waiver. We see no basis to require a longer period for reflection or deliberation between the time that defense counsel raises the tactical question and the time for making the waiver. (<u>Cf. People v. Watts</u> (1977) 67 Cal.App.3d 173, 182-183, when time is requested, one hour is a reasonable time to contemplate a plea bargain.) The decision may even be made after the selection of the jury has begun. (<u>People v. Medina</u> (1935) 9 Cal.App.2d 259, 260.) Remorse after the court trial has an unsatisfactory outcome is not evidence that the waiver was unknowing or unintelligent. If that were allowed as a basis to obtain a retrial, every court trial would be infirm.

Similarly, a posttrial assertion that the defendant did not understand his right to a jury trial will not suffice. The defendant must, at a minimum, assert some particularized material lack in knowledge about the decision and persuade the court that if he had been better informed he would not have agreed to the waiver. (<u>Cf., e.g., In re Alvernaz</u> (1992) 2 Cal.4th 924, 938 [prejudice required to set aside rejection of a plea bargain on grounds of ineffective assistance of counsel, i.e., must show that with effective assistance would have accepted the offer].)

[Petitioner] made no showing of a particularized material lack in knowledge about the decision to waive a jury trial.

For all the foregoing reasons, [petitioner and co-defendant Gaines'] contentions that the trial court erred in denying their motions for new trial based on the claim that their waivers of trial by a jury were not knowing and intelligent has no merit.

<u>People v. Mosley</u>, 2008 WL 344488 at *3-4

Petitioner argues that trial counsel never fully explained the ramifications of waiving a jury trial and counsel purposely used deception and trickery in forcing petitioner to make the waiver. Petitioner states this all occurred 20 minutes prior to a jury being selected.

7

1   Traverse at 3.[3]  Petitioner faults the trial court by not explicitly asking petitioner if trial counsel

2   explained the differences.

3                  Regardless of what trial counsel may have said to petitioner, a review of the

4   record indicates that the trial court properly explained what rights petitioner and co-defendant

5   Gaines were waiving.

6          THE COURT: [Petitioner] and Mr. Gaines, let me advise you of specifically what
           it is that you are agreeing to.  As you can tell based on the Information in this
7          case, there are a number of charges that have been filed against you.  If convicted
           of all these charges, you are facing potentially life sentences if convicted.  Has
8          anyone figured out what the minimum sentence is in this case?

9          [PROSECUTOR]: Your Honor - -

10         THE COURT: Five three, would be 25 years to life, but there would be 25 years
           to life, but there would be determinative sentences.

11

12         [PROSECUTOR]: One moment, your Honor.  I need to play it safe, I think it
           would be somewhere in the neighborhood of something like, for [petitioner], just
           to play it safe, it would be something like 19, 19 years eight months, plus 25 years
13         to life.  And I'm just sort of throwing in the 664/187 as a 664/654 to a 664/211.

14         THE COURT: All right.

15         [PROSECUTOR]: But, but, I , I guess, theoretically, it could be larger than that.

16         THE COURT: [Petitioner] and Mr. Gaines, do you both understand if you are
           both convicted, that you are facing life sentences in this case?
17
           DEFENDANT GAINES: Yes, sir.
18
           THE COURT: That your minimum eligible parole period could be in excess of 45
19         years.  Do you both understand that?

20         [PETITIONER]: Yes, sir.

21         DEFENDANT GAINES; Yes.

22         [PETITIONER'S COUNSEL]: Your honor, I think if would be prudent, since we
           are taking up this issue, a recital of any offers available.
23
           THE COURT: Are there any offers at this point?
24

25

26          [3] As exhibits are interspersed throughout the filing, the court has referred to all page
       numbers as they appear on the court's electronic filing system.

8

1    [PROSECUTOR]: At this point, today, there are no offers.

2    THE COURT: Obviously, if there are some offers on table as we are proceeding
     through this process, I'm sure both [petitioner] and Mr. Gaines would welcome
3    the opportunity to potentially resolve this if possible.  Again, let me specifically
     advise you what you are agreeing to:
4           You have the right to have twelve members of this community listen to the
     evidence, and decide whether or not both of you, both [petitioner] and Mr. Gaines,
5    both of you are guilty of the offenses set forth in this Complaint;
            Also, whether or not the enhancements, that this offense involved or was
6    committed in the commission and in furtherance of criminal street gang, and the
     enhancement that the offenses were committed by the personal discharge of a
7    firearm resolved and litigated before a jury.
            And, ultimately, that the jury would have to find beyond a reasonable
8    doubt that the base offense, as well as those enhancements are proven true.
            In other words, they must find you guilty.  That's twelve members of the
9    community must unanimously find you guilty.
            [Petitioner], do you understand that?
10
     [PETITIONER]: Yes, sir.
11
     THE COURT: Mr. Gaines, do you understand that?
12
     DEFENDANT GAINES: Yes, your honor.
13
     THE COURT: Also at that trial, you would be required - - or permitted, at least, to
14   call witness and examining witness that the Prosecution may call.
            You could use the subpoena power of the Court to compel the attendance
15   of the witnesses and evidence could be used in the case.  You still have those
     rights.  But during the course of the jury trial, you would also have those rights.
16   Do you understand those rights?

17   [PETITIONER]: Yes, sir.

18   DEFENDANT GAINES: Yes, your honor.

19   THE COURT: Obviously, you have the right to remain silent and not incriminate
     yourself at a jury trial as you would at a court trial.  Do you understand that?
20
     [PETITIONER]: Yes, sir.
21
     DEFENDANT GAINES: Yes, your honor.
22
     THE COURT: And, Mr. Gaines do you waive your right to a jury trial?  In other
23   words, do you waive your right to have twelve members of this Community
     decide beyond a reasonable doubt that you are in fact guilty, do you waive just the
24   right to a jury trial?

25   DEFENDANT GAINES: Yes, your honor.

26   THE COURT: Do you understand this Court will be deciding the issue whether or

9

1    not you're guilty and whether or not the allegations are true.  Do you understand
2    that?

3    DEFENDANT GAINES: Yes, sir.

4    THE COURT: All right.  [Petitioner], do you also waive your right to a jury trial?

5    [PETITIONER]: Yes, sir.

6    THE COURT: Do you understand that the issue of your guilt and the issue in
     terms of truthfulness of the enhancements, in other words, whether or not the
7    enhancements are true or false, that issue, again, would be resolved by me?  Do
     you understand that?

8    [PETITIONER]: Yes, sir.

9    THE COURT: Do you agree to that?

10   [PETITIONER]: Yes, sir.

11   Reporter's Transcript (RT) at 41-45

12          It is evident from the trial transcript that even if trial counsel failed to explain the

13   differences between a jury and bench trial, the trial court fully explained what petitioner's waiver

14   entailed.  While petitioner may fault trial counsel, the trial court explained in detail the

15   consequences of the waiver and petitioner listened and agreed.

16          Petitioner's sole argument that the trial court neglected to ask if petitioner

17   discussed the topic with counsel does not warrant habeas relief.  Petitioner has cited no Supreme

18   Court authority requiring a trial court to make this inquiry.  In fact, the record reflects that the

19   jury waiver was voluntary, knowing, and intelligent which is solely what the Supreme Court has

20   mandated.  Petitioner has ultimately failed to demonstrate that the state court's denial of this

21   claim is contrary to established federal authority.  This claim should be denied.

22          Ineffective Assistance of Counsel

23          Petitioner also contends that trial counsel was ineffective by proceeding with a

24   bench trial.

25          Legal Standard

26          A claim of ineffective assistance of counsel is cognizable as a claim of denial of

10

the Sixth Amendment right to counsel, which guarantees not only assistance, but effective

assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063

(1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial cannot be

relied upon as having produced a just result.  Id., 104 S. Ct. at 2064.

Discussion

This claim was denied by the state court in petitioner's state habeas action.

> Finally, petitioner attaches an affidavit from his appointed trial counsel, who
> explained his tactical reasons for advising petitioner to waive a jury trial and have
> a court trial instead.  Petitioner, however, does not appear to be claiming
> ineffective assistance of counsel in this regard.  Regardless, appointed trial
> counsel's reasons appear to have constituted a reasonable tactical decision to
> forego a jury trial, thus to the extent the petition could be read to include such a
> claim, it fails under Strickland.

Answer, Exh. B at 5.

Petitioner's trial counsel submitted the following affidavit, referenced above, on

August 3, 2008, during petitioner's state court appeal, discussing the reason for choosing a bench

trial.

> I recall meeting with Judge Hom and the attorney for the co-defendant, John Roth,
> prior to trial for in limine motions.  Due to the judge's rulings concerning his
> allowing into evidence prior incidents involving [petitioner], which were highly
> inflammatory, in addition to the facts of the present case, which were also
> inflammatory, a jury trial tactically seemed unfavorable.  This combined with
> comments that the judge made prior to trial that he did not see this as being a gang
> case, and what seemed at the time to be weak evidence in the current case
> indicating that the current case was done for the purpose and for the benefit of a
> gang, I favorably considered asking for a court trial.
>
> I recall being given short time to decide.  I do recall discussing the matter with
> [petitioner].  I recall [petitioner] waiving a jury trial and asking for a court trial.

Traverse at 9.

However, in petitioner's traverse he states that trial counsel promised petitioner

that a bench trial would result in the charges being reduced to assault and two possessions and he

would get no more than 12 years in prison.  Traverse at 4.  Trial counsel also allegedly informed

11

1    petitioner that he would receive life in prison due to gang enhancements if he proceeded with a

2    jury.  Traverse at 5.  Petitioner further states he "had a trial by judge and did not benefit from any

3    of counsel's promises.  Petitioner was found guilty and received 42 years to life."  Id.  There is

4    no indication that trial counsel has ever been presented or responded to these alleged promises.

5         The above allegations were not present in petitioner's state petition to the superior

6    court which provided a reasoned opinion.  Petitioner made this argument in his state habeas

7    petitions to the court of appeal and Supreme Court which denied the petitions without a reasoned

8    opinion.

9         The ordinary standards under federal law for an evidentiary hearing, which are

10   well known and well established in the Supreme Court and Ninth Circuit, are as follows.  "To

11   obtain an evidentiary hearing on an ineffective assistance of counsel claim, a habeas petitioner

12   must establish that (1) his allegations, if proven, would constitute a colorable claim, thereby

13   entitling him to relief and (2) the state court trier of fact has not, after a full and fair hearing,

14   reliably found the relevant facts."  Correll v. Stewart, 137 F.3d 1404, 1413 (9th Cir. 1998).

15        Nevertheless, the court does not have to hold an evidentiary hearing when the

16   record clearly refutes the collateral factual allegations raised by petitioner.  Schriro v. Landrigan,

17   550 U.S. 465, 474, 127 S. Ct. 1933, 1940 (2007).  Moreover, Schriro also announced that in

18   determining whether to grant an evidentiary hearing the federal court must apply the AEDPA

19   deferential standards to legal and factual questions necessarily reached by the state courts.  Id.

20   Thus, for example, if the reasons for counsel actions were at issue, but under deferential

21   standards, the court could not find prejudice, no evidentiary hearing would be necessary.

22        In the instant case, an evidentiary hearing is not required.  Regardless of what trial

23   counsel may have told petitioner, the record clearly shows that the trial court in questioning

24   petitioner about his choice to forgo a jury trial explained the length of the sentence that petitioner

25   was facing and established that there were no deals or anything else that would provide petitioner

26   with a shorter sentence.

1    As set forth in the section above, the trial court explained to petitioner that he

2  could receive life in prison with a minimum eligible parole period that could be in excess of 45

3  years.  RT at 42.  The trial court also inquired about any offers that had been made and was told

4  there were no offers.  Id.  Despite petitioner's self serving statements about what trial counsel

5  allegedly said, the record clearly refutes petitioner's allegations and it is apparent that petitioner

6  was well aware of what sentence he faced by proceeding with a bench trial.  Pursuant to Schriro

7  an evidentiary hearing is not required.

8    Nor has petitioner shown that counsel was ineffective pursuant to Strickland.

9  Even if trial counsel made these statements, there was no prejudice as the trial court cured any

10  error in explaining to petitioner the risks of proceeding with a bench trial.  Therefore, this claim

11  should be denied.

12    Claim 2 - Sufficiency of the Evidence

13    Petitioner next argues that there was insufficient evidence to support the gang

14  enhancement and the convictions for attempted robbery and attempted murder.

15    Legal Standard

16    When a challenge is brought alleging insufficient evidence, federal habeas corpus

17  relief is available if it is found that upon the record evidence adduced at trial, viewed in the light

18  most favorable to the prosecution, no rational trier of fact could have found "the essential

19  elements of the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,

20  319, 99 S. Ct. 2781 (1979).  Jackson established a two-step inquiry for considering a challenge to

21  a conviction based on sufficiency of the evidence.  U.S. v. Nevils, 598 F.3d 1158, 1164 (9th Cir.

22  2010) (en banc).  First, the court considers the evidence at trial in the light most favorable to the

23  prosecution.  Id., citing Jackson, 443 U.S. at 319, 99 S.Ct. 2781.  "'[W]hen faced with a record of

24  historical facts that supports conflicting inferences," a reviewing court 'must presume–even if it

25  does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in

26  favor of the prosecution, and must defer to that resolution.'"  Id., quoting Jackson, 443 U.S. at

13

326, 99 S.Ct. 2781.

"Second, after viewing the evidence in the light most favorable to the prosecution, a reviewing court must determine whether this evidence, so viewed is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" Id., quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781. "At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." Id.

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination.  Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

Discussion

Gang Enhancement

Petitioner argues there was insufficient evidence to support the gang enhancement.  Petitioner contends the evidence only demonstrated a run of the mill crime and failed to show he had the specific intent to further any *future* gang related criminal conduct.

The gang enhancement, California Penal Code § 186.22(b)(1), applies to "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . ."

The court of appeal denied this claim with a reasoned opinion.

"No substantial evidence claims are of two kinds.  Sometimes the claim is that the evidence does address the elements of the pertinent standard but does not afford a permissive inference critical to some element.  However, usually the claim is that the evidence is inadequate because it does not address all of the elements of the pertinent standard.  In such a case the dispute is about the nature of the standard."

14

(Jermstad v. McNelis (1989) 210 Cal.App.3d 528, 552.) [Petitioner's] arguments primarily fall into the latter category.

[Petitioner] argues that an element of the criminal street gang offense of section 186.22(b)(1), is that one must have had the specific intent to further some additional, i.e., future, criminal conduct of gang members beyond the charged offense. He points to statements that specific intent is an intent to "accomplish some additional consequence by commission of the proscribed act." (See, e.g., People v. Lyons (1991) 235 Cal.App.3d 1456, 1458.) He suggests this means the present charged crime cannot be a criminal street gang offense without evidence that it was done with the intent to facilitate other, future offenses by gang members. (See Garcia v. Carey (9th Cir. 2005) 395 F.3d 1099, 1103 [the enhancement was improper where "no evidence indicating that this robbery was committed with the specific purpose of furthering other gang criminal activity, and there is nothing inherent in the robbery that would indicate that it furthers some other crime"].)

. . .

Section 186.22(b)(1) does not require intent to facilitate other, future offenses by gang members. "[T]he 'specific intent to promote, further, or assist in any criminal conduct by gang members' " is satisfied if, in committing a felony (People v. Morales (2003) 112 Cal.App.4th 1176, 1198 (Morales)), e.g., attempted robbery, the defendant also intends to promote, further, or assist any criminal conduct by other gang members. Where two or more gang members knowingly act together to perpetrate a felony, each is guilty of that felony and each, by aiding and encouraging his cohort(s), can be found to have the intent to promote, further, or assist "'any criminal conduct by gang members' "(ibid.). FN4

FN4. Morales states: "Defendant argues that reliance on evidence that one gang member committed a crime in association with other gang members is 'circular....' Not so. Arguably, such evidence alone would be insufficient, even when supported by expert opinion, to show that a crime was committed for the benefit of a gang. The crucial element, however, requires that the crime be committed (1) for the benefit of, (2) at the direction of, or (3) in association with a gang. Thus, the typical close case is one in which one gang member, acting alone, commits a crime. Admittedly, it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang. Here, however, there was no evidence of this. Thus, the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members. [¶] If defendant is arguing that there was insufficient evidence of the specific intent element (as opposed to the benefit/direction/association element), we disagree. Again, specific intent to benefit the gang is not required. What is required is the 'specific intent to promote, further, or assist in any criminal conduct by gang members....' Here, there was evidence that defendant intended to commit robberies, that he intended to commit them in association with Flores and Moreno, and that he knew that Flores and Moreno were members of his gang. Moreover, as we held in part IV, ante, there was sufficient evidence that defendant intended to aid and abet the robberies Flores and Moreno actually committed. It was fairly inferable that he intended to assist criminal conduct by his fellow gang members." (Morales, supra, 112 Cal.App.4th at p. 1198.)

15

The gist of the trial court's remark that there need not be intent to benefit the gang, if there is intent to commit a crime "in association with other members of the gang," is correct.  Garcia v. Carey, supra, 395 F.3d 1099 is simply incorrect in concluding that the felony to be enhanced must be committed with the specific purpose of furthering some other criminal activity of the gang.  "'[I]ntent to ... assist in any criminal conduct by gang members' " is shown by acting together to perpetrate an offense.  (Morales, supra, 112 Cal.App.4th at p. 1198.)

The purpose of the "California Street Terrorism Enforcement and Prevention Act" (Pen.Code, § 186.20 et seq.) is "eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs" (id., § 186.21, 2d par.).  We can see no reason why the Legislature would differentiate for purposes of this enhancement between crimes by "violent street gangs ... against the peaceful citizens of their neighborhoods" (ibid.) based on a derivative intent to facilitate other, additional crimes.  The evil against which the enactment aims is all such offenses.  The search for the meaning of the words of the enactment must be guided by that evident purpose.  (See Civ.Code, § 3511.)

In addition to "'intent to ... assist in any criminal conduct by gang members'" (Morales, supra, 112 Cal.App.4th at p. 1198), the evidence must show a "felony 'committed for the benefit of, at the direction of, or in association with any criminal street gang'" (id. at p. 1197, quoting § 186.22(b)(1)).  It is possible that gang members could commit a crime together that is not for the benefit of, at the direction of, or in association with any criminal street gang, e.g., "a frolic and detour unrelated to the gang." (Morales, at p. 1198.)  However, where active street gang members "gang up" on a victim to commit a felony that is a paradigmatic gang activity, e.g., as here where active Crip members combine forces to commit an armed robbery on the street, there is sufficient evidence that the offense is committed "in association" with a criminal street gang.

The evidence affords inferences that on the night of this offense: (1) defendant gang members were traveling in their car with other gang associates; (2) as a group they ganged up to assault a man who disrespected them by calling out a warning that they might strike a pedestrian; (3) as a group they verbally abused Starks when driving past him; (4) as a group they drove to a place where defendants could intercept and rob Starks at gunpoint; and (5) as a group, after the bungled robbery, they assisted defendant Gaines in obtaining treatment for his gunshot wound, assuring him they would call upon resources of the gang to aid him. [Petitioner's] contention that there is insufficient evidence to support the criminal street gang offense enhancement finding is not meritorious.

People v. Mosley, 2008 WL 344488 at *5-7.

The court of appeal opinion was issued in 2008 after the Ninth Circuit ruling of

Garcia v. Carey, 395 F.3d 1099 (9th Cir. 2005), discussed in the state court's opinion, but before

the recent ruling in Briceno v. Scribner, 555 F.3d 1069 (9th Cir. 2009).  Petitioner relies on both

of these cases in his argument.  The Ninth Circuit held in Briceno that:

16

1
2
3
4
5

California law requires the prosecutor to prove two things. First, the prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang." Cal.Penal Code § 186.22(b)(1). Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." Id. We have previously recognized the importance of keeping these two requirements separate, and have emphasized that the second step is not satisfied by evidence of mere membership in a criminal street gang alone.

6   Briceno, at 1078 (citing Garcia, at 1102-03 & n. 5).

7   In Briceno, the gang expert testified in terms of "generalities" that the crimes

8   could glorify the gang, but did not provide direct or circumstantial evidence regarding the

9   defendant's specific intent. Briceno, at 1078. In such circumstances, the Ninth Circuit held the

10   expert testimony did not establish the petitioner's specific intent in committing the crimes. Id. at

11   1078-79. This was particularly so in Briceno because the defendant submitted proof of a

12   different motivation, i.e. to obtain money to buy Christmas gifts. Id. at 1078.

13   Subsequent to Garcia, and specifically in response to Garcia, many California

14   courts of appeal have held that section 186.22's specific intent element does not require the intent

15   to enable or assist criminal activities by gang members aside from the offense charged. The

16   intent to commit the gang related offense suffices. See, e.g., People v. Hill, 142 Cal.App.4th

17   770, 774 (2006); People v. Romero, 140 Cal.App.4th 15, 19-20 (2006); People v. Vasquez, 178

18   Cal.App.4th 347, 353-54 (2009).

19   Because of the conflict, the Ninth Circuit recently asked the California Supreme

20   Court to decide the question of state law. Emery v. Clark, 604 F.3d 1102 (9th Cir. 2010). On

21   June 23, 2010, the California Supreme Court granted the request for certification but deferred

22   further action in the matter pending consideration of a related issue in People v. Albillar, 162

23   Cal. App. 4th 935 (2008); S163905. The California Supreme Court just issued a decision in

24   Albillar on December 20, 2010. The California Supreme Court disagreed with Garcia and

25   Briceno and agreed with the reasoning of the California Appellate courts that "[t]here is no

26   statutory requirement that this 'criminal conduct by gang members' be distinct from the charged

17

1   offense, or that the evidence establish specific crimes the defendant intended to assist his fellow

2   gang members in committing." (Citations omitted).  People v. Albillar, S163905 at 23-24.

3          As the state supreme court has now definitively interpreted its law, the contrary

4   interpretation of Briceno and Garcia is inoperative.  Briceno, 555 F. 3d at 1080.  The evidence

5   was sufficient herein.  Moreover, regardless of the California Supreme Court ruling and Ninth

6   Circuit cases, in the instant case the evidence presented at trial would satisfy either requirement.

7          There is little doubt that the first prong of the law is satisfied in that petitioner

8   committed the crime for benefit of, at the direction of, or in association with a gang.  Petitioner

9   and the co-defendant were identified as Crips gang members due to use of gang signs and their

10  statements at the AM/PM and as they dropped off the wounded co-defendant at the hospital, in

11  the jail classification context prior to the incident and the cell phone that was recovered with

12  petitioner.

13         There was also sufficient evidence at trial to support the second prong that the

14  crime was committed to promote, further or assist any criminal conduct by gang members.  The

15  gang expert testified that protecting turf and territory is important to the Crips.  RT at 784-85.

16  The area in question with respect to the instant incident is held by the 29th Street Crips.  Id.

17         In the instant case, there was testimony that incident occurred due to the victim

18  being present on petitioner's Crips territory.  When the victim was assaulted he was asked who

19  he was and where he was from.  RT at 78, 82-83.  The gang expert testified that these questions

20  were asked so petitioner and the co-defendant would know who the victim was to see if they

21  were dealing with a rival gang member.  RT at 812.  The gang expert also testified that these

22  questions, and the victim being assaulted and shot, was all done for the benefit of the Crips gang

23  and is one of its primary activities.  RT at 782, 811.  These types of actions serve to increase and

24  spread their reputation in the community.  RT at 814.  The trier of fact reasonably could have

25  found that petitioner specifically intended to enhance the gang's reputation and protect their

26  \\\\\

1   territory through these violent acts and therefore the furtherance of future criminal activity.[4]

2               This was the type of evidence lacking in <u>Garcia</u> and <u>Briceno</u>.  In <u>Garcia</u>, there was

3   no testimony or other evidence to support the idea that the crime was conducted to further the

4   criminal activity of a gang.  <u>Emery</u>, 604 F.3d at 1115.  There was also a similar lack of evidence

5   in <u>Briceno</u>.  <u>Briceno</u>, 555 F.3d at 1081.

6               In <u>Briceno</u>, the Ninth Circuit described other cases where there was sufficient

7   evidence noting that in those cases there was evidence presented so:

8
9           "a jury could reasonably conclude that the defendant committed the crime with the
            specific intent to benefit the gang, as the defendant either committed the crime to
            protect gang "turf" or brandished gang signs or a gang moniker during the attack.
10          <u>See</u>, <u>e.g.</u>, <u>People v. Villalobos</u>, 145 Cal.App.4th 310, 51 Cal.Rptr.3d 678, 681
            (2007) (crime committed on gang turf); <u>Hill</u>, 47 Cal.Rptr.3d at 876 (defendant
11          announced gang membership) . . ."

12  <u>Briceno</u>, 555 F.3d at 1081.

13              As this type of evidence was presented in the instant case, similar to <u>Villalobos</u>

14  and <u>Hill</u>, the state court's denial of this claim was not an unreasonable application of Supreme

15  Court authority and the claim should be denied.

16              <u>Attempted Robbery</u>

17              The court of appeal also denied petitioner's claim that there was insufficient

18  evidence to support the conviction for attempted robbery.

19          [Petitioner] contends that there is insufficient evidence to support the conviction
            for attempted robbery.  He argues that there is not substantial evidence that when
20          codefendant Gaines reached into the victim's pocket he did so with the requisite
            intent to steal.  He submits that: "For all the evidence shows, the checking of
21          Starks's pocket was for defendants' safety."  The argument is unpersuasive and the
            contention of error has no merit.
22
            Circumstantial inferences are for the trier of fact.  (E.g., <u>People v. Towler</u> (1982)
23          31 Cal.3d 105, 118.)  The two Crips accosted Starks and threatened him by
            pointing a pistol at him.  Thereafter, defendant Gaines put his hand in Starks's
24

25          [4] Co-defendant Gaines' federal petition for writ of habeas corpus brought the exact same
    claim concerning the gang enhancement and was recently denied.  No. CIV S-09-1144 GEB TJB;
26  2010 WL 3608157 *6-7 (E.D. Cal. Sep. 10, 2010).

1   pocket.  There is no evidence of any other reason other than robbery for the armed
2   detention of the lone victim in the middle of the night.  Based on this evidence, a
    rational trier of fact could find beyond a reasonable doubt that defendants were
3   attempting to rob Starks.

4   People v. Mosley, 2008 WL 344488 at *7.

5          Petitioner has failed to show that there was insufficient evidence to support the

6   attempted robbery count or that the state court opinion was an unreasonable application of

7   Supreme Court authority.  As described by the court of appeal, a rational trier of fact could easily

8   conclude that petitioner pointing a gun at the victim while the co-defendant put his hands in the

9   victim's pockets could be construed as attempted robbery.

10         Petitioner argues that if the intent had been to rob the victim, petitioner and the

11  other defendant could have robbed the victim after he was shot and laying on the ground.  While

12  this is true, petitioner seems to forget that he had to drive his co-defendant to the hospital, after

13  petitioner accidently shot him.  The evidence set forth at trial was sufficient for the trier of fact to

14  find the essential elements of attempted robbery.  Petitioner's claim is meritless and should be

15  denied.

16                 Attempted Murder

17         Petitioner next claims that there was insufficient evidence to support attempted

18  murder.  This claim was denied on appeal as being procedurally barred without a reasoned

19  opinion, however the undersigned may reach the merits of the claim as it is meritless.  §

20  2254(b)(2).

21         If a state court denies constitutional claims without an explicated decision, a

22  federal court reviewing a habeas corpus application pursuant to § 2254(a) "ha[s] no basis other

23  than the record for knowing whether the state court correctly identified the governing legal

24  principle or was extending the principle into a new context."  Delgado v. Lewis, 223 F.3d 976,

25  981-82 (9th Cir. 2000).  "While Supreme Court precedent is the only authority that is controlling

26  under AEDPA, we look to Ninth Circuit case law as 'persuasive authority for purposes of

1   determining whether a particular state court decision is an "unreasonable application" of

2   Supreme Court law.' " Luna v. Cambra, 306 F.3d 954, 960 (9th Cir.2002).  Thus, pursuant to

3   Delgado, the Court must conduct an independent review of the record to determine whether the

4   state court's decision was objectively unreasonable.  In Delgado, the Ninth Circuit held that,

5   "Federal habeas review is not de novo when the state court does not supply reasoning for its

6   decision, but an independent review of the record is required to determine whether the state court

7   clearly erred in its application of controlling federal law."  223 F.3d at 982; see also Luna, 306

8   F.3d at 954 (quoting Fisher v. Roe, 263 F.3d 906, 915 (9th Cir. 2001) (internal citation omitted)

9   ("We reverse only if 'a careful review of the record and the applicable case law leaves us with

10  the "firm conviction" that the state court was wrong.' ")).

11          At trial the victim testified that petitioner and the co-defendant were accosting

12  him, when petitioner accidentally shot the co-defendant.  RT at 89.  At that time, the victim

13  attempted to run away and he testified that petitioner shot at him multiple times and the victim

14  was struck by a bullet that entered his buttocks and exited his lower back.  RT at 90, 93-94, 930.[5]

15  Only one shell casing was recovered from the scene, which was found to match the gun later

16  found with petitioner at his arrest.  RT at 62, 339.

17          At trial, petitioner presented an expert witness in crime scene investigation.  RT at

18  921.  The expert presented five different theories on what could have occurred including that

19  there was a second gunmen, not petitioner, who shot the victim, perhaps with a different gun.

20  RT at 931-34.[6]  While no bullet was recovered from the victim's body, the expert stated that the

21  bullet that struck the victim fragmented and 9mm shells do not normally fragment on soft tissue.

22  RT at 931.  The expert testified that other types of bullets are more likely to fragment.  RT at

23  933.  Therefore, it may not have been a 9mm that struck the victim.  However, the expert

24  _____

          [5] Other witnesses also testified that they heard multiple gun shots.

25

          [6] The expert theorized that the second gunmen could have been in the car that petitioner
26  and the co-defendant exited.

21

1  conceded that he was not able to review x-rays of the victim and overall was faced with a lack of

2  evidence with respect to this case.  RT at 928.

3            Ultimately, the judge did not fully credit the defense expert's testimony and

4  credited the victim's testimony in finding that petitioner was the shooter and guilty of attempted

5  murder.  Petitioner now argues that based on the defense expert's theories, there was insufficient

6  evidence to support the conviction.  Essentially, petitioner faults the judge for not crediting the

7  theory of a second shooter.  Petitioner argues that based on the expert's testimony it was quite

8  possible that there was a different gun used to shoot the victim which means either petitioner had

9  a second gun or there was a second shooter.[7]  The defense expert's theory, while possible, does

10  not seem probable and the expert conceded that his opinion was based on a lack of evidence and

11  he did not even review the x-rays when making his determination about the type of bullet that

12  may have struck the victim.

13            It is clear from the record that there was sufficient evidence to prove attempted

14  murder beyond a reasonable doubt.  Without again restating the testimony, it was fairly clear that

15  petitioner shot at the victim multiple times with a 9mm handgun as the victim fled, striking the

16  victim once in the back, which can be construed as attempted murder.  Petitioner has failed to

17  demonstrate that no rational trier of fact could have found the essential elements of the crime.

18  Petitioner's claim should be denied.

19            Claim 3 - Ineffective assistance of Counsel

20            Petitioner raises seven different claims that trial or appellate counsel was

21  ineffective.

22            Legal Standard

23            A claim of ineffective assistance of counsel is cognizable as a claim of denial of

24  _____

25            [7] While petitioner's claim was denied in his state habeas petition as procedurally barred, the state court noted that even if petitioner was not the shooter he would still be guilty due to

26  accomplice liability.

the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id., 104 S. Ct. at 2064.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687, 104 S. Ct. at 2064. The defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688, 104 S. Ct. at 2064. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. The reasonableness of counsel's decisions may be assessed according to professional norms prevailing at the time of trial. Silva v. Woodford, 279 F.3d 825, 846 (9th Cir. 2002).

Second, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687 104 S. Ct. at 2064. The test for prejudice is not outcome-determinative, i.e., defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was impaired is also not sufficient. Id. at 693, 104 S. Ct. at 2067-68. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. Id., 466 U.S. at 694, 104 S. Ct. at 2068.

\\\\\

Preliminary Hearing

Petitioner retained counsel on June 3, 2005, and retained counsel withdrew on May 1, 2006. Petitioner contends that retained counsel was ineffective for waiving the preliminary hearing and agreeing to an amended information. This claim was denied with a reasoned opinion on habeas review in the state court.

> Petitioner next claims that his retained trial counsel was ineffective in waiving the preliminary hearing and stipulating that the prosecutor could amend the accusatory pleading to include other charges supported by the 1200 pages of discovery.
>
> Petitioner fails to attach any reasonably available documentary evidence to support this claim, nor does the court's file for Case Nos. 05F02575 and 05F02507 indicated that that occurred. Specifically, petitioner was originally charged only in Sacramento County Superior Court Case No. 05F02575, and before the matter was called for preliminary hearing, the People moved to consolidate the matter with Case No. 05F02507, in which only petitioner's accomplice had originally been charged. The amended complaint filed at that time, on May 18, 2005, preceded any calling for a preliminary hearing. It was not until thereafter, on January 20, 2006, that the preliminary hearing was called and apparently waived. It was not until February 1, 2006, that petitioner was arraigned on the information then filed. On February 15, 2006, he was arraigned on an amended information, and another amended information was purportedly allowed, over defense objection, during the court trial itself. However, when petitioner stood convicted of the charges and was sentenced on them, they were the same basic charges alleged in the May 18, 2005 consolidated complaint; no additional charge has been made in any amended information. Although Penal Code § 1009 precludes the People from adding a new charge in an amended information when no preliminary hearing has been held (see People v. Winters (1990) 221 Cal.App.3d 997, 1005-1008), the statute does not preclude the People from making corrections to already-existing charges in an amended information. Nor does the record show that there was any stipulation. Nor does petitioner show that he suffered any prejudice from the waiver of the preliminary hearing. As such, petitioner's claim fails (Swain, supra; Strickland, supra).

Answer, Exh. B at 1-2.

Petitioner sets forth the relevant facts above, states counsel's actions were improper and then concludes that he received ineffective assistance of counsel. However, petitioner does not describe how he was prejudiced by the waiver of the preliminary hearing. Petitioner states that the amended complaint contained additional charges from a completely

\\\\\

24

different incident, but that is not reflected in the record.[8]  It is insufficient to conclude ineffective assistance of counsel, without any support.  Nor does petitioner set forth any argument that the state court opinion is an unreasonable application of federal authority.  Most importantly, the Supreme Court has stated there is no constitutional right to a preliminary hearing.  See Gerstein v. Pugh, 420 U.S. 103, 119-25, 95 S.Ct. 854 (1975).

Even if counsel erred in waiving the preliminary hearing, petitioner has failed to show prejudice from this decision and the claim should be denied.

Hearsay

Petitioner argues that trial counsel was ineffective for failing to object to hearsay. Yet, petitioner does not identify the specific hearsay in question in either his petition or traverse. Respondent interpreted this claim as referring to petitioner's state petitions that referenced the blue cell phone allowed into evidence as a result of a police officer's hearsay testimony.  This claim was denied without a reasoned opinion by the state court.  Due to the lack of a reasoned opinion the undersigned must conduct an independent review of the record to determine whether the state court's decision was objectively unreasonable.

When petitioner was arrested in a car, the police officer recovered a cell phone from the seat where petitioner had been sitting.  RT at 756.  The phone had the words "Crip Gang" on the face.  Id.  The officer called a number from the cell phone and the person who answered described petitioner as her brother.  RT at 757.

However, trial counsel objected to this evidence.  The trial court overruled trial counsel's objection that the evidence was hearsay, and allowed the evidence to show a connection between petitioner and the phone.  RT at 757-62.

Trial counsel could not be ineffective as he objected to the evidence and was

---

[8] It appears petitioner is referring to evidence that petitioner and the others assaulted someone at an AM/PM store earlier in the evening.  Petitioner was not charged with this assault but it was introduced to support the gang enhancements.

1  overruled.  Even if petitioner raised this claim as an error by the trial court, any error was

2  harmless.  This claim is frivolous and should be denied.

3          Irrelevant Evidence

4          Petitioner states that trial counsel failed to object to irrelevant evidence, but again

5  fails to specifically identify the evidence.

6          Respondent theorizes that petitioner may be referring to claim in his state petition

7  regarding an employee from an AM/PM store who testified that petitioner used the word "crips"

8  and observed petitioner and others beat up a man at the store.  RT at 504-06.

9          Yet, trial counsel did object to this evidence, but the trial court overruled the

10  objection and permitted the evidence to be introduced to demonstrate that petitioner was in a

11  gang.  RT at 504-06.  As trial counsel objected any claim for ineffective assistance of counsel

12  fails and any perceived error by the trial court is harmless.  This claim should be denied.

13          Failure to call an Expert

14          Petitioner next argues that trial counsel was ineffective for failing to call an expert

15  witness to refute the prosecution's expert testimony that petitioner was a gang member.  This

16  claim was denied in petitioner's state habeas case.

17          Petitioner next claims that his appointed trial counsel was ineffective in failing to
           present an expert to challenge the reliability of the prosecution's gang expert.

18

19          Petitioner, however, fails to set forth with particularity what an expert on his
           behalf would have testified to that would have been reasonably likely to have
           made a difference in the outcome of the trial, nor does he attach any reasonably

20          available documentary evidence to support the claim, requiring its denial under
           Swain, Harris and Strickland.

21

22  Answer, Exh. B at 3.

23          The state court opinion is accurate in that petitioner has failed to set forth what his

24  proposed expert would have testified about, other than presumably that petitioner was not a gang

25  member.  Nor has petitioner proffered any statements that the prosecution's expert testimony was

26  inaccurate or unreliable.  Regardless, petitioner's trial counsel had the opportunity to cross

                                        26

1  examine the prosecution's gang witness and even if another expert successfully rebutted the

2  prosecution's testimony there was ample evidence as discussed in the sufficiency of evidence

3  section that plaintiff was a gang member.

4         This claim should be dismissed.

5        <u>Failure to Call a Witness</u>

6         Petitioner next argues that trial counsel was ineffective for failing to call a

7  witness.  After the victim was shot, he called his girlfriend, Nichole Cunningham, from his cell

8  phone and stated that 5 guys got out of a car and assaulted him.  As the victim testified at trial

9  that only petitioner and the co-defendant exited the car, petitioner contends that trial counsel

10  should have called Cunningham to impeach the testimony.  This claim was denied by the state

11  court in petitioner's habeas petition.

12       Petitioner next claims that his second trial counsel, appointed after his retained
counsel withdrew from the case, was ineffective in waiting until midway through
13  the court trial to locate the only two eyewitnesses and present them, being the
complaining witness Justin Starks, whom petitioner admits did testify at trial, and
14  his girlfriend Nichole Cunningham, who had told police that 5 guys got out of a
car and jumped the complaining witness.  In support, petitioner attaches a copy of
15  the police report, recounting Cunningham's statement that Starks had just called
her from his cell phone and told her that he had been shot, that there were 5 guys
16  who got out of a white car and jumped him and that he knew who there were;
Cunningham stated that she did not herself see anything, as she was at home.

17

18  As noted above, Starks did testify at trial, and testified that a car had passed him
before the attack, yelling profanities at him, and that after that he was accosted by
19  petitioner, whom he recognized as someone he had seen two weeks earlier, and by
codefendant Gaines, both of whom were on foot.  Starks testified that Gaines
20  announced he had been shot by petitioner, and then petitioner continued to shoot,
hitting Starks as Starks attempted to flee.  In addition, there was evidence before
21  the court that after the shooting, a car drove to the hospital with four men in it,
and that the men dropped off Gaines who had been shot.  Thus, the court already
22  had evidence before it that gave rise to the inference that petitioner, Gaines, and
two others were in a car that passed Starks, that petitioner and Gaines got out of
23  the car, accosted Starks and then shot him, and that because Gaines had also been
shot, petitioner and the other two had immediately thereafter driven Gaines to the
24  hospital.  Petitioner does not attach any trial testimony to show that Starks had not
been asked whether he had told Cunningham that 5 guys got out of the car instead
25  of two; regardless, even if Cunningham had been presented as a witness, it is not
reasonably probable that there would have been a difference in the outcome, as
26  Starks recognized petitioner and identified petitioner as one of the persons who
accosted him and also as being the shooter.  Thus, the claim of ineffective

1   assistance of counsel fails under <u>Strickland</u>, supra.

2   Answer, Exh. B at 2-3.

3   Petitioner has failed to show that the state court opinion is an unreasonable

4   application of federal law.  Even if Cunningham testified and the victim was impeached with a

5   prior inconsistent statement, it would not have affected the verdict.  It is entirely probable that as

6   the victim lay bleeding on the street after just being shot, he was confused when he called his

7   girlfriend and was not explicit about differentiating that there were 5 people in the car but only 2

8   exited the car.  Petitioner's argument that this affects the witnesses credibility is meritless.[9]  In

9   addition, there was overwhelming evidence that petitioner shot the victim after attempting to rob

10  him.

11  To the extent that petitioner argues that counsel was ineffective for failing to call

12  as witnesses the other occupants of the car that petitioner and the co-defendant exited, the

13  argument is frivolous as petitioner has not presented any evidence that they would have provided

14  beneficial testimony.  It is also entirely possible that these people could be charged in some of the

15  events that occurred.

16  This claim should be denied.

17  <u>Denying Petitioner Right to Testify</u>

18  Petitioner next argues that counsel precluded him from testifying after the court

19  ruled that a prior conviction could be used for impeachment thus petitioner was not allowed to

20  tell the jury what happened.  Traverse at 32-33.  However, other than this one sentence, petitioner

21  makes no arguments, cites no cases and sets forth no facts regarding this claim.  This claim was

22  denied without a reasoned opinion by the state court.

23

24      [9] A witness also testified that when the victim was lying on the street after being shot, a
    woman came to him and was speaking to him.  Petitioner believes this was Cunningham who
25  lived nearby, yet Cunningham's report to the police was that she was not there in person.  Even if
    Cunningham did arrive at the scene immediately after the shooting or even if she witnessed it,
26  petitioner has not presented any arguments on what she would testify to that would aid his case.

1    One liners in habeas petitions will not state cognizable habeas claims.  "Without

2    any specification of the mitigating evidence that counsel failed to unearth, Cox's claim must fail.

3    See James v. Borg, 24 F.3d 20, 26 (9th Cir.1994) ("'Conclusory allegations which are not

4    supported by a statement of specific facts do not warrant habeas relief.'").  Cox v. Del Papa, 542

5    F.3d 669, 681 (9th Cir. 2008).  Petitioner does not indicate what testimony he would have

6    presented that would have brought about a different verdict.  Regretting the decision not to testify

7    without providing any indication of what testimony would have been elicited is insufficient to

8    warrant habeas relief.

9    This claim should be denied.

10    Appellate Counsel

11    Finally, petitioner argues that appellate counsel was ineffective for failing to raise

12    on appeal the claims that there was insufficient evidence for the charge of attempted murder and

13    that trial counsel was ineffective.

14    While these claims were not raised on direct appeal, they were all raised in

15    petitioner's state habeas petitions and were denied either summarily or with reasoned opinions.

16    Thus, the state courts had the opportunity to review all these claims.  The sufficiency of evidence

17    claim for attempted murder was denied as being procedurally barred, yet the state court also

18    looked on the merits and denied the claim.  To the extent that claim was not entirely denied on

19    the merits, the claim is still meritless.

20    A claim of ineffective assistance of appellate counsel utilizes the same Strickland

21    standard that is applied to trial counsel.  Smith v. Robbins, 528 U.S. 259, 287, 120 S.Ct. 746, 765

22    (2000).  In reviewing ineffective assistance of counsel claims, California courts apply the

23    Strickland test set forth above.  See People v. Ledesma, 43 Cal.3d 171, 216, 233 (1987)

24    (applying the Strickland test).

25    Based on the reasoning above finding that the attempted murder sufficiency claim

26    was meritless, it is very likely that had this claim been raised on appeal by appellate counsel, it

29

1    would have been denied.[10]

2            For all these reasons, the instant claim of ineffective assistance of appellate

3    counsel is without merit and should be denied.

4            Accordingly, IT IS HEREBY RECOMMENDED that petitioner's writ of habeas

5    corpus be denied.

6            If petitioner files objections, he shall also address if a certificate of appealability

7    should issue and, if so, as to which issues.  A certificate of appealability may issue under 28

8    U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

9    constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate

10   which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

11           These findings and recommendations are submitted to the United States District

12   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

13   days after being served with these findings and recommendations, any party may file written

14   objections with the court and serve a copy on all parties.  Such a document should be captioned

15   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16   shall be served and filed within fourteen days after service of the objections.  The parties are

17   advised that failure to file objections within the specified time may waive the right to appeal the

18   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19   Dated: 12/21/2010

20                                     /s/ Gregory G. Hollows

21                                     _____
                                       UNITED STATES MAGISTRATE JUDGE
     ggh:ab
22   mosl2827.hc

23

24   _____

25       [10] It does not even appear that appellate counsel was ever aware of this claim as
     petitioner's first mention of the claim is March 2, 2009, in his state habeas petition to the court of
26   appeal.  The California Supreme Court denied petitioner's direct appeal on May 14, 2008.